Please call the first case. First case, 3-13-06-59, Kenneth Rutherford v. Workers' Compensation Commission. Counsel, you may proceed. May it please the Court. Good morning, Your Honors. My name is Hania Sohail and I represent the employee Kenneth Rutherford in this matter. Your Honor, this is a workers' compensation appeal. The employee was injured on November 24, 2010. The employee Kenneth Rutherford, at the time of the injury, was working for Peoria District 150. The employee was injured when a scaffolding collapsed on the employee. This case was arbitrated in front of Arbitrator Mathis on March 21, 2012. At the time of the arbitration, the issues in dispute were causal connection, TDD benefits, maintenance benefit, vocational rehab, and liability for medical bills. Arbitrator Mathis found causal connection up to the point of maximum medical improvement, which was May 31, 2011. However, the Arbitrator Mathis denied vocational rehab and denied maintenance benefits. The case was then appealed to the Commission. Commission modified decision of Arbitrator Mathis as to the commencement of the TDD benefits, however, affirmed the decision on all other issues. The appeal to the Circuit Court, Honorable Judge Brand denied and affirmed the decision of the Commission. Today, we are requesting that the decision of the Commission be reversed. The issues presented for today's court is whether there was enough evidence presented at the time of the arbitration that could have established that the causal connection, or there existed causal connection between the petitioner's or the employee's condition of ill-being at the time of the arbitration and the accident that the employee had at Peoria District 150. The second issue is the denial of maintenance benefits, and the third issue is the denial of vocational rehab. So who's Dr. Howder? Dr. Howder is a company doctor. Dr. Howder is a doctor that works at iWork. In this particular case, the employee right after the accident, when he called his supervisor and informed him about the accident, he was directed from his supervisor, Dave Myers, to go see Dr. Howder. And what did Dr. Howder opine? Dr. Howder initially treated the employee with medication and physical therapy. Dr. Howder, as far as the case is concerned, he opined that the petitioner is not safe to go back to work because of his permanent restrictions, because he has medium to heavy permanent restrictions. And in order for the employee to go back to work at Peoria District 150, the job needs to be modified because it's not safe for the employee. So Dr. Howder was of the opinion the effects of the accident had completely resolved by March 28, 2011, correct? Correct. That would be correct. However, Dr. Howder again saw the petitioner for a fitness for duty evaluation. In that visit, Dr. Howder diagnosed the petitioner with degenerative disc condition and chronic back pain. So you've got an FCE that demonstrated the claimant's physical capabilities fell well within the descriptions of his current position, correct? The FCE demonstrated medium to heavy restrictions. Who's Dr. Kuby? Dr. Kuby is the petitioner's or employee's treating spine surgeon. And he opined the claimant suffered only a low back strain as a result of the accident, and it completely resolved itself by May 31, 2011, correct? I disagree, Your Honor. He didn't say that? He said initially his diagnosis was lumbar spine strain, however, he also talked about a disc protrusion that could have been a result of the accident. Could have been the result of the pain bucket, because the accident happened and the pain bucket fell and hit the employee's mid-back. So to cut to the chase, obviously you know the rule is, is there sufficient evidence in the record to support the commission's findings? I've just cited you several of the points that they relied on in holding that it was not causally connected to the accident. So tell us in summary form why the commission couldn't have relied on that evidence. The commission should have relied on the evidence. However, if you look at the commission decision, commission says petitioner employee was at the point of maximum medical improvement as of May 31, 2013. The only doctor that actually specified that the petitioner was at a point of MMI as of that date was Dr. Kuby. Dr. Kuby didn't find that he was MMI, however, also placed permanent restrictions, and those permanent restrictions were a result of the accident. So if you want to read the opinion of Dr. Kuby for MMI purposes, you just cannot read that alone. You have to account the permanent restrictions. Did those restrictions restrict him from working as a head custodian? They would not. They would not restrict him. And didn't Kuby think that that was a degenerative situation not related to any industrial accident? The permanent restriction, your honor? Well, yeah. I would disagree. I would say that when Dr. Kuby was done with his treatment, he said, well, because of his still experiencing symptoms and still having issues, we are going to do a functional capacity evaluation to see what he is capable of doing. Functional capacity evaluation demonstrated medium to heavy duty capacity. And Dr. Kuby said those would be his permanent restrictions, even though those are his permanent restrictions, those permanent restrictions would allow him to go back to work and work as a head custodian. Those permanent restrictions were not related to his degenerative condition. Those were related to the treatment or related to the symptoms that the employee had after he was involved in a work-related accident. Dr. Kuby in his medical records clearly noted that the employee prior to this accident had no prior history of any back or leg pain. Employee testified at the time of the arbitration. He never had experienced any pain in his low back or leg. So who was talking about the degenerative condition? Dr. Kuby did opine, and he said spinal stenosis, so he did opine that he suffers from some degenerative discondition. Dr. Howder, which was a company doctor, with his last treatment note or last fitness for duty evaluation note, mentioned that he has degenerative condition and chronic back pain. So were the restrictions imposed because of the degenerative condition or as a result of the accident? Dr. Kuby said those were a result of the accident. Another doctor, Dr. Kroder, which was a chiropractor that the employee saw, also said initially that because of this accident, employee would need some sort of permanent restrictions. However, at that time, he didn't know what those restrictions would be. So there are two doctors that said that the permanent restrictions are due to the accident. However, there are two doctors, the IME doctor, Dr. Gunnar Anderson, and Dr. Howder, never said whether the employee should not be restricted or if he would have been restricted, that would be related to his degenerative discondition. So I believe there was enough evidence presented at the time of the arbitration where the commission should have found. Well, there may have been enough evidence where the commission could have found. But there's also evidence where the commission could find that there wasn't. And that's... Manifest way, there's no right answer. We can go either way in most cases. So you've got to tell us why it was against the manifest way of the evidence for them to find the way they did. It was against the manifest way of the evidence, Your Honor, because actually there was no evidence that said he didn't have permanent restriction or that his permanent restrictions are not related to the work accident. Gunnar Anderson said he could work without restrictions at all. No, Gunnar Anderson said that he can go back to work full duty. He didn't say he couldn't work without restrictions? And at the industrial accident of November the 24th, he had no permanent impairment to the claimant? Your Honor, in workers' compensation... Did he say that or didn't he? He did say that. Okay, thank you. And just to clarify, Your Honor, in workers' compensation, permanent impairment is different than restrictions. Gunnar Anderson did say that he has no impairment. He did say that he can go back to work full duty. Nobody is... Well, with the exception of Dr. Howard, even the treater said he can go back to work full duty at that specific employer. But that doesn't negate the fact that he had permanent restrictions as a result of the accident. Whether he, within those restrictions, can work for the employer, that's not the question. The question is, again, he had permanent restrictions as a result of the accident. The Commission did not find that. What kind of award did he receive? He received temporary disability benefits until May 31st of 2011. And he also received payment of all the necessary and related medical bills to May 31st of 2011. And you're contesting, obviously, the TTG award. You believe that it should have been awarded to the date of the arbitration hearing? The TTD and MNTS award should have been awarded through the date of the arbitration. Was he terminated at some point? Now he is terminated at the time of the arbitration. No, he was not terminated. So what's your argument as to why the Commission erred on the TTD award? The argument, Your Honor, is that under... And I will tell you the argument of interstate scaffolding. But even if the... For a second, it's... You know, it is not the logical extension of interstate scaffolding. I don't think that it is, but tell us. And I'll get to that. But even under Section 8A, okay? Even under Section 8A, and even there is another appellate court case, which I actually did not cite in my brief, which is Roper Contracting v. Industrial Commission, and I have decided... You didn't cite your brief? I did not cite it. Is there an argument? Well, it is exactly... It touches upon the reasoning of McHenton and Crowden, which I did cite in my brief. Even though McHenton... Don't argue those cases. Don't argue one you didn't cite. And in those cases, the Commission found that somebody who has permanent restrictions and the employer is not accommodating those restrictions, then goes on even a self-directed vocational rehab or self-directed job search, he is entitled to under Section 8A to maintain his benefits. So in this case, the employee presented at the time of the arbitration job searches that he did. He constantly testified that he wanted to go back to work, but the employer never brought him back to work, that he wants to do work, whatever the employee is offering, and he tried to look for jobs, but he couldn't find one. And for that reason, under Section 8A, he is entitled to maintain his benefits. Now, touching about the interstate scaffolding case, we do think that it's a logical extension. And the reason we think it's a logical extension is interstate scaffolding says that the inquiry as to whether the employee is entitled to TDD benefits is whether the condition is stabilized. In this case, the condition has not been stabilized because he had permanent restriction that the employer refused to accommodate. Mack, Hinton, and Crowden in the commission decision cited that it is, or they extended interstate scaffolding to cases where somebody is at maximum medical improvement and when the employer is not accommodating them, they would be entitled to maintain his benefits. The commission held that the claimant reached MMI, as I understand it, on May 31, 2011, correct? Yes. What are they based in on? They based that on the report of Dr. Kuby. Couldn't they believe Kuby's report, his testimony, his report? Why couldn't they hold that to be persuasive? In other words, why couldn't they hang their head on Kuby's report? Well, he was the only doctor who had a date to MMI. Yes. And wasn't he also the claimant's own treating physician? He was the claimant's own treating physician. Doesn't that put him in a pretty good position to know when his patient has reached MMI? And we are not arguing that he has not reached MMI. We are saying, yes, he has reached MMI, but we are saying that based on those two commission decisions, it is a logical extension of interstate scaffolding. And we are asking this appellate court, and we are saying that this is an issue of first impression, to extend the holding of interstate scaffolding to apply to cases where somebody has reached maximum medical improvement. And again, the reason, again, is that interstate scaffolding talked about temporary disability and when the condition is stabilized. We are saying the condition has not been stabilized here. If you read the commission decision, and the commission actually modifies the decision of the arbitrator as to the commencement of TDD benefits, if you look at it, if you read it specifically, the commission states that, well, he even though from March 31st of 2011, the employer had, or the employee had, restricted duty, but because the employer never accommodated that restricted duty, he would still be entitled to TDD benefits up to the date that he reached MMI. So even if you find, if you extend commission logic here that says his duty never changed, he still had the same restrictions on March 31st that he had on May 31st. If he was entitled to TDD benefits for that a month and a half period of time, why is he not entitled to TDD benefits now? Just briefly, touching on the issue of vocational rehab, the employee, in this case, who is attorney, made a demand for vocational rehab and asked for assistance with job placement. However, the employer never replied to it. The employer never did anything that would help the employee either bring him back to the job or find or secure another employment. The employee, again, by his own will, tried to find different jobs, but was unable to. And one of the jobs that there was evidence as well, that one of the jobs that he couldn't do was because of the fact that it was going to pay him less income than it would have been. However, the record also, as Justice Solich indicated, establishes that he could function in his former occupation as a head custodian even with the restrictions imposed, right? Correct. But the employee, the issue is that the employer was never willing to bring him back. I mean, if you look at this case, throughout the evidence was established that this was a stellar employee, promotions throughout his employment history, unblemished record. And this guy gets injured at work. He has permanent restrictions. And he is left hanging by the employer. He is not getting any assistance from the employer. It's your position the employer refused to bring him back. And there's evidence to support that? There is evidence throughout. His testimony, doctor's medical records, the employer never introduced any testimony that contradicts the fact that the employer did anything to bring this guy back to work. And again, Your Honor, therefore, for these reasons, the mentioned reasons, I do believe that there was enough evidence from which commission should have found that there was causal connection between petition's condition of ill-being at the time of the arbitration and petition's condition of ill-being being his permanent restrictions. And also, the commission did err in denying maintenance benefits and also in denying vocational rehab. And there was enough evidence from which they should have granted. Thank you, Your Honor. Thank you. Thank you. You have time to reply.  Thank you, Your Honor. Health Justice Counsel, I'm here on behalf of School District 150. My name's Steve Kelly. And it's our position in this case that the decision of the Illinois Workers' Compensation Commission was not against the manifest way of the evidence. So it's just not left hanging. Can you address the last point? He's opining this is a stellar employee, an unblemished record, ideal employee. He can work in the same job as, I understand, a head custodian, even with the restrictions imposed by his treating position. But he seems to indicate that the employer is no longer interested in bringing him back and sort of dumping the issue. What's your response to that? My response to that, under the Workers' Compensation Commission, he is not entitled to the maintenance benefits requested, temporary toll split benefits requested, because he was deemed to be at maximum medical improvement. My response to that is that the job he had and the job title he had for my client allowed him to return to work with the functional capacity evaluation results that were exhibited. But also, according to the record, aside from the functional capacity evaluation, Dr. Hodder had opined in March of 2011 that this gentleman was at maximum medical improvement, was able to go back to work at that time, and that the effects of this work accident had resolved. That also was in the evidence of Dr. Anderson. And in fact, Dr. Anderson indicated in September that the residual effects of this accident had resolved. So my response to that is that any residual effects, if any, from this work accident did not exist. This gentleman had reached maximum improvement. There is no evidence, or at least there's evidence to support the commission's decision that these common restrictions are not related to the work accident, but related to a pre-existing condition. And there's evidence to support that. Now, whether my client decides to bring this gentleman back within that job is not within the parameters of the Workers' Compensation Act. It may be another avenue if there's some type of action, if they feel there's some type of cause of action. That's another arena. That's not the arena that I deal with. What I deal with is that we have a gentleman who sustained a work injury. We have a gentleman who got treatment from Dr. Hodder. We have a gentleman who received the appropriate treatment, appropriate diagnosis. He has a general condition. Then we have a gentleman who, in March, has indicated that he's at maximum medical improvement. So was he fired? He was not fired at the time of hearing. And so within the transcript and within the evidence of this case, he was still technically an employee. In fact, through his own testimony, he acknowledged on cross-examination that he was able to do the custodial work. Sometimes in these cases, when employees are at maximum medical improvement, jobs get filled. Sometimes that happens. You have a budgeted school district who has to keep rooms clean, have to keep positions filled. And sometimes these people come back, and they're put back on a list. It happens. This gentleman, there's sometimes union issues. Now, that wasn't brought out in this case, but it could have been a union issue. So that happens in these type of situations. But in looking at the case law in the Workers' Compensation Act, look at the parameters that we have in this case, I do not believe he's entitled to the maintenance and the TTA that's asked here. He was at maximum medical improvement. There's evidence to support that he was at maximum medical improvement. It's not against the manifesto of the evidence. In fact, if you throw everything out away, and you look at his own testimony, he says, I could have went back to do that type of work. What's your response to her argument that this case calls for an extension of the holding  I disagree with that. I disagree with the fact that I understand the ruling in that case in the sense that that person was not at maximum medical improvement. And it's not fair for an injured person who's on restrictions, and it's not maximum improvement to lose their job, and you throw them out in the world and say, go do something. That's not fair. But in this case, this gentleman was at maximum improvement. And in fact, he was offered a job, and he turned it down. So therein lies, in your mind, the distinguishment with why this case is distinguishable from Minnesota's Catholic. It is. It is. Because in that case, there was no question he hadn't reached MMI. But here he had. He has. By two doctors. And in here, he had the ability to perform tasks of his former job, according to Dr. Anderson, according to Dr. Hodder, and according to Mr. Rutherford. He had the ability to do that. And I asked him about the job search that they brought in at time of trial. They give it to us at time of trial. He's doing a job search, and you look at some of those jobs. And I asked Mr. Rutherford, you didn't ask him those jobs. You didn't think you can do it? He goes, no. I think I can do those jobs. So that's why I asked him about the 10 different jobs he thought he could do and the various type of activities that he represented to other employers that he thought he can do. What about the Voc Rehab issue? I don't think that Voc Rehab is, he's entitled to Voc Rehab in this case. I don't think they've met the standard of a national team. And I think this is a situation. You have a gentleman who's able to work pre-injury status. So we'd ask based on that status, based on the evidence in this case, it's not against the manifest way of the evidence, we ask you to affirm the decision. Thank you. Mr. Kelly, excuse me. Just a small point, but I want to nail down the date that Dr. Howder believed the client was able to return to full duty. Page 13 of your brief, you indicate that was March 28. Then page 14, you say, Howder believed it was returned to full duty on March 31. I apologize, March 28.  Yes. I'm sorry for that discrepancy. OK. Thank you, counsel. Ms. Soha, you may reply. Just a few things briefly, your honors. Your honor, counsel himself just stated that it is not fair for an injured person on restrictions to be left hanging. He himself stated that. I don't think this is any different than the case interested in scaffolding. MMI is not a magic word. It doesn't mean that if somebody's MMI, the Affirmed Restrictions Employer, is ready to do or allowed to do whatever they want with the person. But what's your definition of when somebody reaches MMI? MMI is defined as Maximum Medical Improvement. That means what? It is a stage where no more treatment. Resolves itself to the extent that it can. Correct. But at the same time, when somebody who even have reached MMI and has permanent restrictions, the employer has to either accommodate them or the employer has to find a vocational counselor to vote them so they can go ahead and find another job. In this case, if this honorable court finds that the commissioner did err in finding no causal connection with the permanent restrictions and find causal connection with the permanent restrictions, then the issue of maintenance and vocational rehab becomes an issue of law. Because again, if this guy has permanent restrictions, which in his opposition he did, which were a result of the work related accident, then even if you don't extend interstate scaffolding, but per Section 8A of Workers Compensation Act, the employer has to vote the employee. The employer has to pay the maintenance benefits. And for that reason, again, we respectfully request that this honorable court reverse and remand this case for further proceedings. Thank you, Counsel Ball. If this may, I would like to take my advisement that this position shall issue.